Exhibit A

# 2020 CA 001956 B KALBIAN HAGERTY LLP Vs. WELLS FARGO, N.A. et al KAH



- Case Type:
- Civil II
- Case Status:
- Open
- File Date:
- 03/19/2020
- Action:
- Complaint for Negligence Filed
- Status Date:
- 03/19/2020
- Next Event:
- 07/10/2020

**All Information**   **Party**   **Event**   **Docket**   **Receipt**   **Disposition**



## Party Information

**KALBIAN HAGERTY LLP**
- Plaintiff

| | |
|---|---|
| • Disposition | **Alias** |
| ○ | |
| ○ Disp Date | **Party Attorney** |
| ○ | • Attorney |
| | • KALBIAN, HAIG V |

**WELLS FARGO, N.A.**
- Defendant

| | |
|---|---|
| • Disposition | **Alias** |
| ○ Removed Per Amended Complaint Filed | |
| ○ Disp Date | **Party Attorney** |
| ○ 03/25/2020 | |

**WELLS FARGO BANK, N.A.**
- Defendant

| | |
|---|---|
| • Disposition | **Alias** |
| ○ | |
| ○ Disp Date | **Party Attorney** |
| ○ | |

## Events

| Date/Time | Location | Type | Result | Event Judge |
|---|---|---|---|---|
| 07/10/2020 09:30 AM | Courtroom JM-4 | Initial Scheduling Conference-60 | | HIGASHI, KELLY A |

## Docket Information

| Date | Docket Text | Image Avail. |
|---|---|---|
| 03/19/2020 | Complaint for Negligence Filed  Receipt: 453656  Date: 03/19/2020 | |

| **Date** | **Docket Text** | **Image Avail.** |
|---|---|---|
| 03/19/2020 | eComplaint Filed. Submitted 03/19/2020 10:52. chd<br>Attorney: KALBIAN, Mr HAIG V (400976)<br>KALBIAN HAGERTY LLP (Plaintiff); | Image |
| 03/19/2020 | Event Scheduled<br>Event: Initial Scheduling Conference-60<br>Date: 07/10/2020   Time: 9:30 am<br>Judge: HIGASHI, KELLY A   Location: Courtroom JM-4 | |
| 03/19/2020 | Issue Date: 03/19/2020<br>Service: Summons Issued<br>Method: Service Issued<br>Cost Per: $<br><br><br>WELLS FARGO, N.A.<br>2001 K Street, N.W., Suite 103<br>WASHINGTON, DC  20006<br>Tracking No: 5000225502 | |
| 03/19/2020 | Complaint Package eServed to Filer | Image |
| 03/25/2020 | First Amended Complaint Filed. Submitted 03/25/2020 12:52. chd<br>Attorney: KALBIAN, Mr HAIG V (400976)<br>KALBIAN HAGERTY LLP (Plaintiff); | Image |
| 03/25/2020 | Additional eFiling Document to First Amended Complaint Filed. Submitted 03/25/2020 12:52. chd<br>Attorney: KALBIAN, Mr HAIG V (400976)<br>WELLS FARGO BANK, N.A. (Defendant); | Image |
| 03/25/2020 | Issue Date: 03/25/2020<br>Service: Summons Issued<br>Method: Service Issued<br>Cost Per: $<br><br><br>WELLS FARGO BANK, N.A.<br>2001 K STREET, N.W., SUITE 103<br>WASHINGTON, DC  20006<br>Tracking No: 5000225669<br><br><br>WELLS FARGO BANK, N.A.<br>1090 VERMONT AVENUE, N.W.<br>WASHINGTON, DC  20005<br>Tracking No: 5000225670 | |
| 03/26/2020 | Initial Summons Requested as to:<br>KALBIAN HAGERTY LLP (Plaintiff); | Image |
| 03/31/2020 | Affidavit of Service of Summons & Complaint on Wells Fargo Bank, N.A. Filed. Submitted 03/31/2020 09:03. ajm<br>Attorney: KALBIAN, Mr HAIG V (400976)<br>WELLS FARGO BANK, N.A. (Defendant); | Image |
| 03/31/2020 | Proof of Service<br>  Method   : Service Issued<br>  Issued   : 03/25/2020<br>  Service  : Summons Issued<br>  Served   : 03/26/2020<br>  Return   : 03/31/2020<br>  On     : WELLS FARGO BANK, N.A.<br>  Signed By : Max Schriner<br><br>  Reason   : Proof of Service | |

| **Date** | **Docket Text** | **Image Avail.** |
|---|---|---|
| | Comment : | |
| | Tracking #: 5000225670 | |

### Receipts

| **Receipt Number** | **Receipt Date** | **Received From** | **Payment Amount** |
|---|---|---|---|
| 453656 | 03/19/2020 | KALBIAN, Mr HAIG V | $120.00 |
| Total | Total | Total | Total |
| | | | $120.00 |

### Case Disposition

| **Disposition** | **Date** | **Case Judge** |
|---|---|---|
| Undisposed | | HIGASHI, KELLY A |

**Filed**
**D.C. Superior Court**
**03/19/2020 10:52AM**
**Clerk of the Court**

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**

KALBIAN HAGERTY LLP
888 17ᵗʰ Street, N.W.
Suite 1000
Washington, D.C.  20006

     *Plaintiff,*

v.

WELLS FARGO, N.A.
2001 K Street, N.W., Suite 103
Washington, D.C. 20006

     Serve:
     Jovan Banks, Registered Agent
     2001 K Street, N.W., Suite 103
     Washington, D.C. 20006

     *Defendant.*

Civil Action No.:

## COMPLAINT

Plaintiff, KALBIAN HAGERTY LLP (hereinafter "Plaintiff" or "KH"), by and through its undersigned counsel, hereby files this action against WELLS FARGO, N.A. (hereinafter "Wells Fargo" or "Defendant"), and alleges as follows:

## PARTIES

1.    Plaintiff Kalbian Hagerty LLP is a District of Columbia limited liability partnership law firm with its principal place of business at 888 17ᵗʰ Street, N.W., Suite 1000, Washington, D.C. 20006 and operates as a full service national and international law firm (hereinafter "KH").

2.    Defendant Wells Fargo ("Wells Fargo" or the "Bank") is a national financial institution that conducts banking business in the District of Columbia, including, but not limited to, its branch located at 2001 K Street, N.W., Suite 103, Washington, DC 20006, and, at all times

relevant herein, has been Plaintiff's depository and bank associated with its Interest on Lawyers'

Trust Account ("IOLTA").

## JURISDICTION

3.     This Court has jurisdiction over this action and the Defendant pursuant to D.C.

Code §§ 11-921 and 13-423, as Wells Fargo transacts business in the District of Columbia, and

this action arises out of the provision of those services.

## INTRODUCTION

**4.     This is a case involving a District of Columbia law firm's client trust account**

**being raided by fraudsters right under the nose of Wells Fargo—one of the largest financial**

**institutions in the United States---who was entrusted to help safeguard client funds that are**

**deposited into the client trust account.**

5.     This lawsuit arises from Defendant's negligent actions in processing a fraudulent

cashier's check, which was unbeknownst to Plaintiff, when it was presented ***in person*** for deposit

to the Bank and the Bank's failure to timely notify Plaintiff of its dishonor, such that Plaintiff was

a victim of a fraud scheme.  But for Defendant's actions and omissions, Plaintiff would not have

instructed that funds from the fraudulent cashier's check be disbursed from its trust account and

forever lost.  Wells Fargo failed to exercise ordinary care in processing this cashier's check,

breached its Deposit Account Agreement with Plaintiff, and negligently supervised its employees

in allowing this fraud to occur, as stated herein.

## FACTUAL ALLEGATIONS

6.     KH has had a banking relationship with Wells Fargo for almost 20 years, dating

back to the founding of the firm in the year 2000, subject to the terms and conditions of a Deposit

Account Agreement.  In fact, Haig V. Kalbian, one of KH's founding partners, had a banking

relationship with financial institutions (i.e. First Union Bank and Wachovia Bank) that were eventually acquired by Wells Fargo. Mr. Kalbian, who had a firm of his own prior to KH, commenced those banking relationships in or around 1990 where he maintained both operating and client trust accounts. In these many decades, KH and its partners never encountered the type of mal and nonfeasance that lies at the core of this case.

7.      In accordance with applicable rules of professional responsibility, KH keeps and safeguards client funds in the firm's possession in its Wells Fargo IOLTA account prior to distribution in connection with a variety of client matters.

8.      On Monday, December 10, 2018, a "Mr. John R. Lopez" emailed Eric Siegel, Esq. (Of Counsel to KH) stating that he had signed an engagement letter to retain Eric Siegel to represent him in an employment dispute with his former employer, Sunbelt Rentals. Inc.

9.      On the same day, Mr. Siegel received an email purportedly from "Mr. Rod Samples," Chief Financial Officer of Sunbelt Rentals, which stated that Mr. Lopez had notified him that Mr. Siegel had been retained to represent Mr. Lopez. The email acknowledged that Sunbelt Rentals owed Mr. Lopez $126,000.00 and that payment in full would be made within a week. Mr. Samples asked for payment instructions, which Mr. Siegel supplied to him.

10.     On Tuesday, December 11, 2018, the receptionist at KH received a FedEx package purportedly from Sunbelt Rentals, addressed to Eric Siegel which contained what purported to be a cashier's check in the amount of $126,000.00 made payable to Kalbian Hagerty, LLP.

11.     The check was deposited the next day, December 12, 2018 by KH's Office Manager, LeVette Crawford-Thomas, in-person at Wells Fargo branch number 0065995, which is located at 2001 K Street, N.W., Suite 103, Washington, D.C. 20006.

12.     The deposit was acknowledged by Wells Fargo bank teller "Ebony" in a

Transaction Receipt which indicated that the funds, $126,000.00, would be available to KH on December 13, 2018.   Ebony did not examine the check in the presence of Ms. Thomas to assess its legitimacy prior to accepting the deposit.

13.     On Thursday, December 13, Ms. Thomas checked the balance in the KH IOLTA account online and confirmed that the $126,000.00 deposited on December 12, 2018 was available to KH.

14.     On Friday, December 14, "Mr. Lopez" emailed Mr. Siegel with instructions to wire the funds received from Sunbelt Rentals, minus the KH contingency fee, to his account in Mexico in order to complete a financial transaction.  James Hagerty, Managing Partner of KH, wired funds in the amount of $83,985.00 to the purported client through a bank in Mexico.  The amount of $42,015.00 was withheld as attorneys' fees.

15.     It was not until Monday, December 17, 2018, five days after the deposit, that KH received a notice from Wells Fargo that the cashier's check had been returned unpaid, and they deducted the full amount of $126,000.00, plus a return check fee from KH's IOLTA account.

16.     Upon information and belief, once discovering the fraud and/or dishonor of the check, Wells Fargo took no steps to contact the beneficiary bank in Mexico to halt payment and disbursement of the proceeds of that fraudulent check.

17.     KH has now suffered a loss of $83,985.00.

18.     Banks are required by law to credit the receiving account with funds from a cashier's check on the business day following the business day of the deposit.   12 U.S.C. § 4002(a)(2)(F).

19.     Wells Fargo's procedures should have been designed to determine the legitimacy of a cashier's check within the legal time limit for crediting the customer's account with the funds.

4

20.     For example, had Wells Fargo contacted the U.S. Department of Treasury's Financial Crimes Enforcement Network ("FinCEN"), it would have been notified that the cashier's check was a forgery.  It would have learned that at least three other law firms had already been victims of this scam involving a Citibank official check **with the same account number** as that found on the cashier's check at issue in this action.

21.     KH acted reasonably in disbursing funds on the second day (approximately 48 hours) after the deposit in reliance on Wells Fargo's procedures detecting any potential fraud within the required 24-hour period.

22.     In fact, the money was wired approximately 48 hours after deposit, giving Wells Fargo plenty of time to discover the fraud and prevent the wire transfer from being authorized.

23.     KH contacted Wells Fargo to rectify its error in detecting the fraud and to refund the funds to KH's IOLTA account by letter dated January 17, 2019.

24.     By letter dated March 6, 2019, Wells Fargo declined to refund the $83,985.00 to KH's IOLTA account.

25.     In its letter, Wells Fargo deemed KH's claim filed on February 22, 2019, when in fact the claim was submitted to the Wells Fargo Fraud Claims Department via fax more than one month earlier, on January 17, 2019.

26.     In its March 6, 2019 letter, Wells Fargo stated that it is "responsible for exercising ordinary care and complying with the [Deposit Account] Agreement" with KH.  Wells Fargo further stated that in situations where a deposit is made in person, "… ordinary care requires only that we follow standards that do not vary unreasonably from the general standards followed by similarly situated banks."

27.     Wells Fargo is similarly situated to other national banks who have sophisticated

policies and procedures in place to detect and address potential frauds associated with deposited cashier's checks and other instruments, including but not limited to extensive training of banking employees regarding what to look for on a check to ensure its legitimacy or, conversely, to determine that it is fraudulent.

28.     Wells Fargo, like other national banks, also has "watch lists" and/or national databases containing exemplars of repeatedly deposited checks or cashier's checks that have been found to be fraudulent to aid in detecting fraud before it is committed.

29.     Yet, in the case of KH, Wells Fargo failed to exercise ordinary care by, among other ways, failing to visually inspect the check upon deposit in person and later to run the deposited cashier's check and its check number against its "watch list" and/or national database to uncover the fraud prior to KH believing that the check had cleared and subsequently wiring funds out of its IOLTA account in reliance on the clearance of the check.

30.     It is customary banking practice for a national bank such as Wells Fargo to require bank tellers to examine a cashier's check or other instrument presented in person for deposit in order to determine whether there are any indications that would lead to a suspicion that the presented check is fraudulent.

31.     Upon information and belief, neither Ebony nor any other Wells Fargo employee timely examined the check prior to making it available for wire transfer by KH.

32.     Wells Fargo's policies and procedures should have been designed to determine the legitimacy of a cashier's check within the legal time limit for crediting the customer's account with the funds.

33.     KH's loss was caused by Wells Fargo not notifying KH of the apparent fraud until *five days* after the deposit was made.

6

34.     Upon information and belief, Wells Fargo failed to properly train and supervise its bank tellers, including but not limited to "Ebony", to determine whether cashier's check deposits show indicia of being fraudulent.

35.     Significantly, Wells Fargo was on prior notice of this type of fraudulent activity, as there has been prior criminal and civil litigation in which fraudulent cashier's check(s) *with the very same account number* as on the check at issue here were used (*See, e.g., Milavetz et al v. Wells Fargo*, U.S. District Court for the District of Minnesota, Case 0:12-cv-00875).  This alone should have placed Wells Fargo on notice and prompted it, through its employees, to be on alert and exercise the type of care that a customer, like KH, relied on.

36.     Furthermore, a close examination of the cashier's check shows that it was an "HSBC" watermarked check drawn on a Citibank account.  This additional fact should have raised suspicions at Wells Fargo that a fraud may very well be in the works.

37.     Moreover, there were multiple different fonts on the check that are readily apparent upon close inspection by a trained eye, which should have raised further suspicions at Wells Fargo of a possible fraudulent check.

38.     Wells Fargo was in a superior position than KH and its employees to detect this fraud and provide notice of dishonor prior to the wire transfer being processed, particularly in light of the prior civil and criminal litigation, and investigations by the Federal Bureau of Investigations, involving nearly identical fraudulent checks sharing the very same account number as the check at issue here.

39.     Ordinary care required Wells Fargo to be vigilant in detecting fraudulent checks, particularly in the circumstances of this case, where *the exact account number at issue* has been used to commit fraud against Wells Fargo customers *as early as 2012* and has been circulated

throughout the internet since that time.  *See Milavetz et al. v. Wells Fargo*, U.S. District Court for the District of Minnesota, Case 0:12-cv-00875) (filed April 6, 2012).

40.     A reasonable customer could expect that a bank of Wells Fargo's size and sophistication that exercises ordinary care on behalf of its customers in compliance with federal requirements would have circulated memoranda to all of its branches after receipt of the fraudulent check that is the subject of the 2012 lawsuit to prevent this occurrence from happening again.

41.     Bank records disclose that Wells Fargo either has or should have repeatedly sent notifications since 2012 going forward to alert its employees to be aware and vigilant for cashier's checks (1) of a significant monetary amount that may be suspicious or (2) that bore the ***very same check number from the very same issuing bank*** as the cashier's check that is the subject of the prior 2012 lawsuit against Wells Fargo.

42.     Wells Fargo also did not immediately contact the bank in Mexico where the funds were wired in an effort to put a "stop payment" on that account and/or to "take back" the funds once it was discovered that the cashier's check was fraudulent.

43.     ***At the latest***, that discovery took place on Monday morning, December 17, when Wells Fargo notified KH that the cashier's check was dishonored.

44.     Had Wells Fargo communicated its discovery of the fraudulent check to the bank in Mexico immediately upon discovery on Monday morning, December 17, assuming that it was not discovered by Wells Fargo the previous Friday or earlier, the funds would not have been disbursed to the person committing the fraud in the first place.

45.     At the very least, Wells Fargo's notification to the bank in Mexico would have triggered an immediate investigation by the bank in Mexico requiring it to place a "hold" on the

funds for disbursement.  Regrettably, Wells Fargo did not take that reasonable course of action, subjecting KH to being victimized and defrauded.

46.     Moreover, given that the IOLTA account is a client trust account, KH placed its trust and confidence in Wells Fargo to ensure that the funds held in that account were protected from fraudulent schemes such as that which occurred here.  These special circumstances gave rise to a fiduciary duty on the part of Wells Fargo to safeguard the funds in KH's IOLTA Account.

47.     Wells Fargo has breached its fiduciary duty by failing to properly screen the instrument prior to making the funds available in the IOLTA account, upon which KH relied in its transmission of an $83,985.00 wire.

48.     All conditions precedent for the filing of this lawsuit have been satisfied.

## COUNT I: NEGLIGENCE

49.     Plaintiff realleges and incorporates by reference preceding paragraphs as if fully set forth herein.

50.     Wells Fargo owed KH a duty to exercise reasonable and ordinary care, consistent with customary banking practices of other banks of its size and sophistication to, among other actions, visually inspect all checks being deposited in person at the bank and to take other efforts, including but not limited to comparing deposited checks with its database of discovered fraudulent checks, to uncover fraud and alert the depositor prior to being damaged by relying on funds availability in authorization additional transactions.

51.     Wells Fargo breached its duty of care in this instance by, *inter alia*, negligent acts including but not limited to (1) failing to visually inspect the deposited check at issue, (2) failing to scrutinize and analyze the check using its resources, expertise and database of fraudulent check exemplars to determine whether the check deposited on December 12, 2018 was, in fact,

fraudulent, (3) failing to exercise due care in accounting for and documenting checks received to determine whether a given check is fraudulent, (4) failing to properly supervise its employees in properly inspecting checks to determine whether they are fraudulent and thereby subject to dishonor, (5) failing to develop and enforce a system of internal controls to comply with federal banking laws, (6) failing to engage in safe and sound banking practices, (7) failing to comply with federal rules and regulations, (8) failing to provide KH, as an IOLTA account trustee of law firm client funds, with due diligence as required by the Financial Crimes Enforcement Network, and (9) failing to promptly notify the Mexico bank and/or KH of the cashier's check dishonor in time to prevent KH from believing that it "cleared" the bank and that it could disburse the check proceeds by wire transfer.

52.     Wells Fargo's breach of duty and/or negligent act(s) and/or omission(s) in this case directly and proximately contributed to or induced its acceptance of the fraudulent check and subsequent authorization to KH that the fraudulent check had "cleared" the bank to allow for its disbursement to the Mexican bank, thereby causing injury to KH, among other ways, by inducing KH to authorize the wire transfer and disbursement of $83,985.00 out of its IOLTA account.

53.     KH's damages proximately resulted from Wells Fargo's breaches of duty.

**WHEREFORE**, Plaintiff prays for the Court to find that Wells Fargo was negligent in carrying out its banking obligations and duties and enter judgment in favor of KH and against Wells Fargo for damages in an amount to be proven at trial, but not less than $83,985.00, plus pre- and post-judgment interest as provided by law.

### COUNT II – FAILURE TO PROVIDE TIMELY NOTICE OF DISHONOR

54.     Plaintiff realleges and incorporates by reference preceding paragraphs as if fully set forth herein.

55.    Wells Fargo failed to provide timely notice of dishonor, in violation of D.C. Code § 28:3-503, which requires that banks provide notice of dishonor "before midnight of the next banking day on which the bank receives notice of dishonor of the instrument."

56.    Upon information and belief, Wells Fargo received notice of dishonor of the instrument on or before December 13, 2018.

57.    Accordingly, Wells Fargo was required to provide notice of dishonor to KH by midnight of the next banking day, i.e., Friday, December 14, 2018.

58.    Rather, Wells Fargo failed to provide notice of dishonor until Monday, December 17, 2018, five days after the deposit and well past the midnight deadline required by D.C. Code § 28:3-503.

59.    Had Wells Fargo provided timely notice of dishonor, the wire transfer would not have been authorized by KH and/or would have had the opportunity to take immediate steps to recall its December 14, 2018 wire transfer to the bank in Mexico.

60.    Due to Wells Fargo's failure to provide timely notice of dishonor of the cashier's check, KH was unable to secure a recall of the December 14, 2018 wire transfer.

61.    Therefore, Wells Fargo's failure to provide timely notice of dishonor proximately caused KH's loss of $83,985.00.

**WHEREFORE**, Plaintiff prays for the Court to find that Wells Fargo failed to provide timely notice of dishonor of the cashier's check to KH as required by D.C. Code § 28:3-503, resulting in monetary loss to KH, and enter judgment in favor of KH and against Wells Fargo for damages in an amount to be proven at trial, but not less than $83,985.00, plus pre- and post-judgment interest as provided by law.

## COUNT III – BREACH OF CONTRACT

62.     Plaintiff realleges and incorporates by reference preceding paragraphs as if fully set forth herein.

63.     KH and Wells Fargo are parties to an enforceable contract referred to as the Wells Fargo Deposit Account Agreement.

64.     The Deposit Account Agreement provides that Wells Fargo is "responsible for exercising ordinary care and complying with the Agreement."

65.     The Deposit Account Agreement provides that Wells Fargo is "responsible for exercising ordinary care when collecting a deposited item."

66.     Wells Fargo breached the Deposit Account Agreement by failing to exercise ordinary care when collecting the deposited item, i.e. the cashier's check, at issue in this case, by (1) failing to visually inspect the deposited check at issue, (2) failing to scrutinize and analyze the check using its resources, expertise and database of fraudulent check exemplars to determine whether the check deposited on December 12, 2018 was, in fact, fraudulent, (3) failing to exercise due care in accounting for and documenting checks received to determine whether a given check is fraudulent, (4) failing to properly train and supervise its employees in properly inspecting checks to determine whether they are fraudulent and thereby subject to dishonor, (5) failing to develop and enforce a system of internal controls to comply with federal banking laws, (6) failing to engage in safe and sound banking practices, (7) failing to comply with federal rules and regulations, and (8) failing to provide KH, as an IOLTA account trustee of law firm client funds, with the due diligence required by the Financial Crimes Enforcement Network.

67.     As a direct and proximate result of Wells Fargo's breach of the Deposit Account Agreement, Kalbian Hagerty has suffered a loss of $83,985.00.

**WHEREFORE**, Plaintiff prays for the Court to find that Wells Fargo breached the Deposit Account Agreement, resulting in monetary loss to KH, and enter judgment in favor of KH and against Wells Fargo for damages in an amount to be proven at trial, but not less than $83,985.00, plus pre- and post-judgment interest as provided by law.

## COUNT IV – BREACH OF FIDUCIARY DUTY

68.     Plaintiff realleges and incorporates by reference preceding paragraphs as if fully set forth herein.

69.     Based on the circumstances of KH being the trustee of client funds in its IOLTA account and its longstanding banking relationship of trust and confidence with Wells Fargo, the parties extended their relationship beyond the limits of the contractual obligations under the Bank's Deposit Account Agreement to a relationship founded upon trust and confidence.

70.     Wells Fargo is responsible for exercising ordinary care and complying with its Deposit Account Agreement and other federal and state law obligations.

71.     Wells Fargo is responsible for exercising ordinary care when collecting a deposited item.

72.     Wells Fargo breached its fiduciary duty owed to KH by failing to exercise ordinary care when collecting the deposited item, i.e. the cashier's check, at issue in this case, by (1) failing to visually inspect the deposited check at issue, (2) failing to scrutinize and analyze the check using its resources, expertise and database of fraudulent check exemplars to determine whether the check deposited on December 12, 2018 was, in fact, fraudulent, (3) failing to exercise due care in accounting for and documenting checks received to determine whether a given check is fraudulent, (4) failing to properly train and supervise its employees in properly inspecting checks to determine whether they are fraudulent and thereby subject to dishonor, (5) failing to develop and enforce a

13

system of internal controls to comply with federal banking laws, (6) failing to engage in safe and sound banking practices, (7) failing to comply with federal rules and regulations, and (8) failing to provide KH, as an IOLTA account trustee of law firm client funds, with the due diligence required by the Financial Crimes Enforcement Network.

73.    As a direct and proximate result of Wells Fargo's breach of its fiduciary duty owed to the law firm, Kalbian Hagerty has suffered a loss of $83,985.00.

**WHEREFORE**, Plaintiff prays for the Court to find that Wells Fargo breached its fiduciary duty to KH, resulting in monetary loss to KH, and enter judgment in favor of KH and against Wells Fargo for damages in an amount to be proven at trial, but not less than $83,985.00, plus pre- and post-judgment interest as provided by law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the District of Columbia Superior Court Rule of Civil Procedure.

Dated: March 19, 2020

Respectfully submitted,

KALBIAN HAGERTY LLP

By /s/ Haig V. Kalbian
Haig V. Kalbian, Bar No. 400976
Eric L. Siegel, Bar No. 427350
Spencer D. O'Dwyer, Bar No. 888187401
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
(202) 223-5600
(202) 223-6625
hkalbian@kalbianhagerty.com
esiegel@kalbianhagerty.com
Sodwyer@kalbianhagerty.com

*Counsel for Plaintiff Kalbian Hagerty LLP*

**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

## KALBIAN HAGERTY LLP

_____
Plaintiff

vs.

## WELLS FARGO, N.A.

Case Number _____

SERVE: Jovan Banks, Registered Agent     Defendant
2001 K Street, N.W., Suite 103
Washington, D.C. 20006                   **SUMMONS**

To the above named Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Haig V. Kalbian
_____
Name of Plaintiff's Attorney

Kalbian Hagerty LLP
_____
Address
888 17th Street, N.W., Suite 1000, Washington, D.C. 20006

202-223-5600
_____
Telephone

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시요.      የאמርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

*Clerk of the Court*

By _____
Deputy Clerk

Date _____

     IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

     If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                     Super. Ct. Civ. R. 4



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                                    Demandante

        contra

                                                Número de Caso: _____

_____
                                    Demandado

### CITATORIO

Al susodicho Demandado:

    Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

    A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                                *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                                        Por: _____
_____                    Subsecretario
Dirección

_____

                                        Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

በአማርኛ የማይታወቁ የሚፈልጉ (202) 879-4828 ይደውሉ     የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ።

    IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

    Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedirayuda al respecto.

                        Vea al dorso el original en inglés
                        See reverse side for English original

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

KALBIAN HAGERTY LLP      Case Number: _____

vs      Date: __March 19, 2020__

WELLS FARGO, N.A.      ☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)* <br>    Haig V. Kalbian | Relationship to Lawsuit |
| Firm Name: <br>    Kalbian Hagerty LLP | ☒ Attorney for Plaintiff |
| Telephone No.:     Six digit Unified Bar No.: <br> 202-223-5600       400976 | ☐ Self (Pro Se) <br> ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury    ☒ 6 Person Jury    ☐ 12 Person Jury

Demand: $ __83,985.00__      Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____ Judge:_____ Calendar #:_____

Case No.:_____ Judge:_____ Calendar#:_____

NATURE OF SUIT:    *(Check One Box Only)*

## A. CONTRACTS            COLLECTION CASES

| | | |
|---|---|---|
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property |      Over $25,000 Pltf. Grants Consent |      Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees |      Under $25,000 Pltf. Grants Consent |      Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration <br>      Award (Collection Cases Only) | |

## B. PROPERTY TORTS

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

## C. PERSONAL TORTS

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander |      Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 19 Wrongful Eviction |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 20 Friendly Suit |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 21 Asbestos |
| ☐ 07 False Arrest | ☒ 16 Negligence- (Not Automobile, | ☐ 22 Toxic/Mass Torts |
| ☐ 08 Fraud |      Not Malpractice) | ☐ 23 Tobacco |
| | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE      IF USED

# Information Sheet, Continued

---

**C. OTHERS**

☐ 01 Accounting
☐ 02 Att. Before Judgment
☐ 05 Ejectment
☐ 09 Special Writ/Warrants
   (DC Code § 11-941)
☐ 10 Traffic Adjudication
☐ 11 Writ of Replevin
☐ 12 Enforce Mechanics Lien
☐ 16 Declaratory Judgment

☐ 17 Merit Personnel Act (OEA)
   (D.C. Code Title 1, Chapter 6)
☐ 18 Product Liability

☐ 24 Application to Confirm, Modify,
   Vacate Arbitration Award (DC Code § 16-4401)
☐ 29 Merit Personnel Act (OHR)
☐ 31 Housing Code Regulations
☐ 32 Qui Tam
☐ 33 Whistleblower

---

**II.**

☐ 03 Change of Name
☐ 06 Foreign Judgment/Domestic
☐ 08 Foreign Judgment/International
☐ 13 Correction of Birth Certificate
☐ 14 Correction of Marriage
   Certificate
☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
☐ 27 Petition for Civil Asset Forfeiture (Currency)
☐ 28 Petition for Civil Asset Forfeiture (Other)

☐ 15 Libel of Information
☐ 19 Enter Administrative Order as
   Judgment [ D.C. Code §
   2-1802.03 (h) or 32-151 9 (a)]
☐ 20 Master Meter (D.C. Code §
   42-3301, et seq.)

☐ 21 Petition for Subpoena
   [Rule 28-I (b)]
☐ 22 Release Mechanics Lien
☐ 23 Rule 27(a)(1)
   (Perpetuate Testimony)
☐ 24 Petition for Structured Settlement
☐ 25 Petition for Liquidation

---

**D. REAL PROPERTY**

☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 04 Condemnation (Eminent Domain)
☐ 10 Mortgage Foreclosure/Judicial Sale
☐ 11 Petition for Civil Asset Forfeiture (RP)

☐ 08 Quiet Title
☐ 25 Liens: Tax / Water Consent Granted
☐ 30 Liens: Tax / Water Consent Denied
☐ 31 Tax Lien Bid Off Certificate Consent Granted

---

/s/ Haig V. Kalbian                                    March 19, 2020

Attorney's Signature                                    Date

**Filed**
**D.C. Superior Court**
**03/19/2020 18:52PM**
**Clerk of the Court**

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

KALBIAN HAGERTY LLP
888 17th Street, N.W.
Suite 1000
Washington, D.C.  20006

    *Plaintiff*,

v.

WELLS FARGO, N.A.
2001 K Street, N.W., Suite 103
Washington, D.C. 20006

    Serve:
    Jovan Banks, Registered Agent
    2001 K Street, N.W., Suite 103
    Washington, D.C. 20006

    *Defendant*.

Civil Action No.:  **2020 CA 001956 B**

## COMPLAINT

Plaintiff, KALBIAN HAGERTY LLP (hereinafter "Plaintiff" or "KH"), by and through its undersigned counsel, hereby files this action against WELLS FARGO, N.A. (hereinafter "Wells Fargo" or "Defendant"), and alleges as follows:

## PARTIES

1.    Plaintiff Kalbian Hagerty LLP is a District of Columbia limited liability partnership law firm with its principal place of business at 888 17th Street, N.W., Suite 1000, Washington, D.C. 20006 and operates as a full service national and international law firm (hereinafter "KH").

2.    Defendant Wells Fargo ("Wells Fargo" or the "Bank") is a national financial institution that conducts banking business in the District of Columbia, including, but not limited to, its branch located at 2001 K Street, N.W., Suite 103, Washington, DC 20006, and, at all times

relevant herein, has been Plaintiff's depository and bank associated with its Interest on Lawyers' Trust Account ("IOLTA").

## JURISDICTION

3.     This Court has jurisdiction over this action and the Defendant pursuant to D.C. Code §§ 11-921 and 13-423, as Wells Fargo transacts business in the District of Columbia, and this action arises out of the provision of those services.

## INTRODUCTION

**4.     This is a case involving a District of Columbia law firm's client trust account being raided by fraudsters right under the nose of Wells Fargo—one of the largest financial institutions in the United States---who was entrusted to help safeguard client funds that are deposited into the client trust account.**

5.     This lawsuit arises from Defendant's negligent actions in processing a fraudulent cashier's check, which was unbeknownst to Plaintiff, when it was presented ***in person*** for deposit to the Bank and the Bank's failure to timely notify Plaintiff of its dishonor, such that Plaintiff was a victim of a fraud scheme.  But for Defendant's actions and omissions, Plaintiff would not have instructed that funds from the fraudulent cashier's check be disbursed from its trust account and forever lost.  Wells Fargo failed to exercise ordinary care in processing this cashier's check, breached its Deposit Account Agreement with Plaintiff, and negligently supervised its employees in allowing this fraud to occur, as stated herein.

## FACTUAL ALLEGATIONS

6.     KH has had a banking relationship with Wells Fargo for almost 20 years, dating back to the founding of the firm in the year 2000, subject to the terms and conditions of a Deposit Account Agreement.  In fact, Haig V. Kalbian, one of KH's founding partners, had a banking

2

relationship with financial institutions (i.e. First Union Bank and Wachovia Bank) that were eventually acquired by Wells Fargo.  Mr. Kalbian, who had a firm of his own prior to KH, commenced those banking relationships in or around 1990 where he maintained both operating and client trust accounts.  In these many decades, KH and its partners never encountered the type of mal and nonfeasance that lies at the core of this case.

7.      In accordance with applicable rules of professional responsibility, KH keeps and safeguards client funds in the firm's possession in its Wells Fargo IOLTA account prior to distribution in connection with a variety of client matters.

8.      On Monday, December 10, 2018, a "Mr. John R. Lopez" emailed Eric Siegel, Esq. (Of Counsel to KH) stating that he had signed an engagement letter to retain Eric Siegel to represent him in an employment dispute with his former employer, Sunbelt Rentals. Inc.

9.      On the same day, Mr. Siegel received an email purportedly from "Mr. Rod Samples," Chief Financial Officer of Sunbelt Rentals, which stated that Mr. Lopez had notified him that Mr. Siegel had been retained to represent Mr. Lopez.  The email acknowledged that Sunbelt Rentals owed Mr. Lopez $126,000.00 and that payment in full would be made within a week.  Mr. Samples asked for payment instructions, which Mr. Siegel supplied to him.

10.      On Tuesday, December 11, 2018, the receptionist at KH received a FedEx package purportedly from Sunbelt Rentals, addressed to Eric Siegel which contained what purported to be a cashier's check in the amount of $126,000.00 made payable to Kalbian Hagerty, LLP.

11.      The check was deposited the next day, December 12, 2018 by KH's Office Manager, LeVette Crawford-Thomas, in-person at Wells Fargo branch number 0065995, which is located at 2001 K Street, N.W., Suite 103, Washington, D.C. 20006.

12.      The deposit was acknowledged by Wells Fargo bank teller "Ebony" in a

3

Transaction Receipt which indicated that the funds, $126,000.00, would be available to KH on December 13, 2018.   Ebony did not examine the check in the presence of Ms. Thomas to assess its legitimacy prior to accepting the deposit.

13.     On Thursday, December 13, Ms. Thomas checked the balance in the KH IOLTA account online and confirmed that the $126,000.00 deposited on December 12, 2018 was available to KH.

14.     On Friday, December 14, "Mr. Lopez" emailed Mr. Siegel with instructions to wire the funds received from Sunbelt Rentals, minus the KH contingency fee, to his account in Mexico in order to complete a financial transaction.  James Hagerty, Managing Partner of KH, wired funds in the amount of $83,985.00 to the purported client through a bank in Mexico.  The amount of $42,015.00 was withheld as attorneys' fees.

15.     It was not until Monday, December 17, 2018, five days after the deposit, that KH received a notice from Wells Fargo that the cashier's check had been returned unpaid, and they deducted the full amount of $126,000.00, plus a return check fee from KH's IOLTA account.

16.     Upon information and belief, once discovering the fraud and/or dishonor of the check, Wells Fargo took no steps to contact the beneficiary bank in Mexico to halt payment and disbursement of the proceeds of that fraudulent check.

17.     KH has now suffered a loss of $83,985.00.

18.     Banks are required by law to credit the receiving account with funds from a cashier's check on the business day following the business day of the deposit.   12 U.S.C. § 4002(a)(2)(F).

19.     Wells Fargo's procedures should have been designed to determine the legitimacy of a cashier's check within the legal time limit for crediting the customer's account with the funds.

20.     For example, had Wells Fargo contacted the U.S. Department of Treasury's Financial Crimes Enforcement Network ("FinCEN"), it would have been notified that the cashier's check was a forgery.  It would have learned that at least three other law firms had already been victims of this scam involving a Citibank official check **with the same account number** as that found on the cashier's check at issue in this action.

21.     KH acted reasonably in disbursing funds on the second day (approximately 48 hours) after the deposit in reliance on Wells Fargo's procedures detecting any potential fraud within the required 24-hour period.

22.     In fact, the money was wired approximately 48 hours after deposit, giving Wells Fargo plenty of time to discover the fraud and prevent the wire transfer from being authorized.

23.     KH contacted Wells Fargo to rectify its error in detecting the fraud and to refund the funds to KH's IOLTA account by letter dated January 17, 2019.

24.     By letter dated March 6, 2019, Wells Fargo declined to refund the $83,985.00 to KH's IOLTA account.

25.     In its letter, Wells Fargo deemed KH's claim filed on February 22, 2019, when in fact the claim was submitted to the Wells Fargo Fraud Claims Department via fax more than one month earlier, on January 17, 2019.

26.     In its March 6, 2019 letter, Wells Fargo stated that it is "responsible for exercising ordinary care and complying with the [Deposit Account] Agreement" with KH.  Wells Fargo further stated that in situations where a deposit is made in person, "… ordinary care requires only that we follow standards that do not vary unreasonably from the general standards followed by similarly situated banks."

27.     Wells Fargo is similarly situated to other national banks who have sophisticated

policies and procedures in place to detect and address potential frauds associated with deposited cashier's checks and other instruments, including but not limited to extensive training of banking employees regarding what to look for on a check to ensure its legitimacy or, conversely, to determine that it is fraudulent.

28.     Wells Fargo, like other national banks, also has "watch lists" and/or national databases containing exemplars of repeatedly deposited checks or cashier's checks that have been found to be fraudulent to aid in detecting fraud before it is committed.

29.     Yet, in the case of KH, Wells Fargo failed to exercise ordinary care by, among other ways, failing to visually inspect the check upon deposit in person and later to run the deposited cashier's check and its check number against its "watch list" and/or national database to uncover the fraud prior to KH believing that the check had cleared and subsequently wiring funds out of its IOLTA account in reliance on the clearance of the check.

30.     It is customary banking practice for a national bank such as Wells Fargo to require bank tellers to examine a cashier's check or other instrument presented in person for deposit in order to determine whether there are any indications that would lead to a suspicion that the presented check is fraudulent.

31.     Upon information and belief, neither Ebony nor any other Wells Fargo employee timely examined the check prior to making it available for wire transfer by KH.

32.     Wells Fargo's policies and procedures should have been designed to determine the legitimacy of a cashier's check within the legal time limit for crediting the customer's account with the funds.

33.     KH's loss was caused by Wells Fargo not notifying KH of the apparent fraud until *five days* after the deposit was made.

6

34.     Upon information and belief, Wells Fargo failed to properly train and supervise its bank tellers, including but not limited to "Ebony", to determine whether cashier's check deposits show indicia of being fraudulent.

35.     Significantly, Wells Fargo was on prior notice of this type of fraudulent activity, as there has been prior criminal and civil litigation in which fraudulent cashier's check(s) *with the very same account number* as on the check at issue here were used (*See, e.g., Milavetz et al v. Wells Fargo*, U.S. District Court for the District of Minnesota, Case 0:12-cv-00875).  This alone should have placed Wells Fargo on notice and prompted it, through its employees, to be on alert and exercise the type of care that a customer, like KH, relied on.

36.     Furthermore, a close examination of the cashier's check shows that it was an "HSBC" watermarked check drawn on a Citibank account.  This additional fact should have raised suspicions at Wells Fargo that a fraud may very well be in the works.

37.     Moreover, there were multiple different fonts on the check that are readily apparent upon close inspection by a trained eye, which should have raised further suspicions at Wells Fargo of a possible fraudulent check.

38.     Wells Fargo was in a superior position than KH and its employees to detect this fraud and provide notice of dishonor prior to the wire transfer being processed, particularly in light of the prior civil and criminal litigation, and investigations by the Federal Bureau of Investigations, involving nearly identical fraudulent checks sharing the very same account number as the check at issue here.

39.     Ordinary care required Wells Fargo to be vigilant in detecting fraudulent checks, particularly in the circumstances of this case, where *the exact account number at issue* has been used to commit fraud against Wells Fargo customers *as early as 2012* and has been circulated

throughout the internet since that time.  *See Milavetz et al. v. Wells Fargo*, U.S. District Court for the District of Minnesota, Case 0:12-cv-00875) (filed April 6, 2012).

40.     A reasonable customer could expect that a bank of Wells Fargo's size and sophistication that exercises ordinary care on behalf of its customers in compliance with federal requirements would have circulated memoranda to all of its branches after receipt of the fraudulent check that is the subject of the 2012 lawsuit to prevent this occurrence from happening again.

41.     Bank records disclose that Wells Fargo either has or should have repeatedly sent notifications since 2012 going forward to alert its employees to be aware and vigilant for cashier's checks (1) of a significant monetary amount that may be suspicious or (2) that bore the ***very same check number from the very same issuing bank*** as the cashier's check that is the subject of the prior 2012 lawsuit against Wells Fargo.

42.     Wells Fargo also did not immediately contact the bank in Mexico where the funds were wired in an effort to put a "stop payment" on that account and/or to "take back" the funds once it was discovered that the cashier's check was fraudulent.

43.     ***At the latest***, that discovery took place on Monday morning, December 17, when Wells Fargo notified KH that the cashier's check was dishonored.

44.     Had Wells Fargo communicated its discovery of the fraudulent check to the bank in Mexico immediately upon discovery on Monday morning, December 17, assuming that it was not discovered by Wells Fargo the previous Friday or earlier, the funds would not have been disbursed to the person committing the fraud in the first place.

45.     At the very least, Wells Fargo's notification to the bank in Mexico would have triggered an immediate investigation by the bank in Mexico requiring it to place a "hold" on the

funds for disbursement. Regrettably, Wells Fargo did not take that reasonable course of action, subjecting KH to being victimized and defrauded.

46. Moreover, given that the IOLTA account is a client trust account, KH placed its trust and confidence in Wells Fargo to ensure that the funds held in that account were protected from fraudulent schemes such as that which occurred here. These special circumstances gave rise to a fiduciary duty on the part of Wells Fargo to safeguard the funds in KH's IOLTA Account.

47. Wells Fargo has breached its fiduciary duty by failing to properly screen the instrument prior to making the funds available in the IOLTA account, upon which KH relied in its transmission of an $83,985.00 wire.

48. All conditions precedent for the filing of this lawsuit have been satisfied.

## COUNT I: NEGLIGENCE

49. Plaintiff realleges and incorporates by reference preceding paragraphs as if fully set forth herein.

50. Wells Fargo owed KH a duty to exercise reasonable and ordinary care, consistent with customary banking practices of other banks of its size and sophistication to, among other actions, visually inspect all checks being deposited in person at the bank and to take other efforts, including but not limited to comparing deposited checks with its database of discovered fraudulent checks, to uncover fraud and alert the depositor prior to being damaged by relying on funds availability in authorization additional transactions.

51. Wells Fargo breached its duty of care in this instance by, *inter alia*, negligent acts including but not limited to (1) failing to visually inspect the deposited check at issue, (2) failing to scrutinize and analyze the check using its resources, expertise and database of fraudulent check exemplars to determine whether the check deposited on December 12, 2018 was, in fact,

fraudulent, (3) failing to exercise due care in accounting for and documenting checks received to determine whether a given check is fraudulent, (4) failing to properly supervise its employees in properly inspecting checks to determine whether they are fraudulent and thereby subject to dishonor, (5) failing to develop and enforce a system of internal controls to comply with federal banking laws, (6) failing to engage in safe and sound banking practices, (7) failing to comply with federal rules and regulations, (8) failing to provide KH, as an IOLTA account trustee of law firm client funds, with due diligence as required by the Financial Crimes Enforcement Network, and (9) failing to promptly notify the Mexico bank and/or KH of the cashier's check dishonor in time to prevent KH from believing that it "cleared" the bank and that it could disburse the check proceeds by wire transfer.

52.     Wells Fargo's breach of duty and/or negligent act(s) and/or omission(s) in this case directly and proximately contributed to or induced its acceptance of the fraudulent check and subsequent authorization to KH that the fraudulent check had "cleared" the bank to allow for its disbursement to the Mexican bank, thereby causing injury to KH, among other ways, by inducing KH to authorize the wire transfer and disbursement of $83,985.00 out of its IOLTA account.

53.     KH's damages proximately resulted from Wells Fargo's breaches of duty.

**WHEREFORE**, Plaintiff prays for the Court to find that Wells Fargo was negligent in carrying out its banking obligations and duties and enter judgment in favor of KH and against Wells Fargo for damages in an amount to be proven at trial, but not less than $83,985.00, plus pre- and post-judgment interest as provided by law.

### COUNT II – FAILURE TO PROVIDE TIMELY NOTICE OF DISHONOR

54.     Plaintiff realleges and incorporates by reference preceding paragraphs as if fully set forth herein.

55.     Wells Fargo failed to provide timely notice of dishonor, in violation of D.C. Code § 28:3-503, which requires that banks provide notice of dishonor "before midnight of the next banking day on which the bank receives notice of dishonor of the instrument."

56.     Upon information and belief, Wells Fargo received notice of dishonor of the instrument on or before December 13, 2018.

57.     Accordingly, Wells Fargo was required to provide notice of dishonor to KH by midnight of the next banking day, i.e., Friday, December 14, 2018.

58.     Rather, Wells Fargo failed to provide notice of dishonor until Monday, December 17, 2018, five days after the deposit and well past the midnight deadline required by D.C. Code § 28:3-503.

59.     Had Wells Fargo provided timely notice of dishonor, the wire transfer would not have been authorized by KH and/or would have had the opportunity to take immediate steps to recall its December 14, 2018 wire transfer to the bank in Mexico.

60.     Due to Wells Fargo's failure to provide timely notice of dishonor of the cashier's check, KH was unable to secure a recall of the December 14, 2018 wire transfer.

61.     Therefore, Wells Fargo's failure to provide timely notice of dishonor proximately caused KH's loss of $83,985.00.

**WHEREFORE**, Plaintiff prays for the Court to find that Wells Fargo failed to provide timely notice of dishonor of the cashier's check to KH as required by D.C. Code § 28:3-503, resulting in monetary loss to KH, and enter judgment in favor of KH and against Wells Fargo for damages in an amount to be proven at trial, but not less than $83,985.00, plus pre- and post-judgment interest as provided by law.

## COUNT III – BREACH OF CONTRACT

62.     Plaintiff realleges and incorporates by reference preceding paragraphs as if fully set forth herein.

63.     KH and Wells Fargo are parties to an enforceable contract referred to as the Wells Fargo Deposit Account Agreement.

64.     The Deposit Account Agreement provides that Wells Fargo is "responsible for exercising ordinary care and complying with the Agreement."

65.     The Deposit Account Agreement provides that Wells Fargo is "responsible for exercising ordinary care when collecting a deposited item."

66.     Wells Fargo breached the Deposit Account Agreement by failing to exercise ordinary care when collecting the deposited item, i.e. the cashier's check, at issue in this case, by (1) failing to visually inspect the deposited check at issue, (2) failing to scrutinize and analyze the check using its resources, expertise and database of fraudulent check exemplars to determine whether the check deposited on December 12, 2018 was, in fact, fraudulent, (3) failing to exercise due care in accounting for and documenting checks received to determine whether a given check is fraudulent, (4) failing to properly train and supervise its employees in properly inspecting checks to determine whether they are fraudulent and thereby subject to dishonor, (5) failing to develop and enforce a system of internal controls to comply with federal banking laws, (6) failing to engage in safe and sound banking practices, (7) failing to comply with federal rules and regulations, and (8) failing to provide KH, as an IOLTA account trustee of law firm client funds, with the due diligence required by the Financial Crimes Enforcement Network.

67.     As a direct and proximate result of Wells Fargo's breach of the Deposit Account Agreement, Kalbian Hagerty has suffered a loss of $83,985.00.

**WHEREFORE**, Plaintiff prays for the Court to find that Wells Fargo breached the Deposit Account Agreement, resulting in monetary loss to KH, and enter judgment in favor of KH and against Wells Fargo for damages in an amount to be proven at trial, but not less than $83,985.00, plus pre- and post-judgment interest as provided by law.

<u>**COUNT IV – BREACH OF FIDUCIARY DUTY**</u>

68.     Plaintiff realleges and incorporates by reference preceding paragraphs as if fully set forth herein.

69.      Based on the circumstances of KH being the trustee of client funds in its IOLTA account and its longstanding banking relationship of trust and confidence with Wells Fargo, the parties extended their relationship beyond the limits of the contractual obligations under the Bank's Deposit Account Agreement to a relationship founded upon trust and confidence.

70.     Wells Fargo is responsible for exercising ordinary care and complying with its Deposit Account Agreement and other federal and state law obligations.

71.     Wells Fargo is responsible for exercising ordinary care when collecting a deposited item.

72.     Wells Fargo breached its fiduciary duty owed to KH by failing to exercise ordinary care when collecting the deposited item, i.e. the cashier's check, at issue in this case, by (1) failing to visually inspect the deposited check at issue, (2) failing to scrutinize and analyze the check using its resources, expertise and database of fraudulent check exemplars to determine whether the check deposited on December 12, 2018 was, in fact, fraudulent, (3) failing to exercise due care in accounting for and documenting checks received to determine whether a given check is fraudulent, (4) failing to properly train and supervise its employees in properly inspecting checks to determine whether they are fraudulent and thereby subject to dishonor, (5) failing to develop and enforce a

13

system of internal controls to comply with federal banking laws, (6) failing to engage in safe and sound banking practices, (7) failing to comply with federal rules and regulations, and (8) failing to provide KH, as an IOLTA account trustee of law firm client funds, with the due diligence required by the Financial Crimes Enforcement Network.

73.     As a direct and proximate result of Wells Fargo's breach of its fiduciary duty owed to the law firm, Kalbian Hagerty has suffered a loss of $83,985.00.

**WHEREFORE**, Plaintiff prays for the Court to find that Wells Fargo breached its fiduciary duty to KH, resulting in monetary loss to KH, and enter judgment in favor of KH and against Wells Fargo for damages in an amount to be proven at trial, but not less than $83,985.00, plus pre- and post-judgment interest as provided by law.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the District of Columbia Superior Court Rule of Civil Procedure.

Dated: March 19, 2020

Respectfully submitted,

KALBIAN HAGERTY LLP

By /s/ Haig V. Kalbian
Haig V. Kalbian, Bar No. 400976
Eric L. Siegel, Bar No. 427350
Spencer D. O'Dwyer, Bar No. 888187401
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
(202) 223-5600
(202) 223-6625
hkalbian@kalbianhagerty.com
esiegel@kalbianhagerty.com
Sodwyer@kalbianhagerty.com

*Counsel for Plaintiff Kalbian Hagerty LLP*

**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
Telephone: (202) 879-1133 Website: www.dccourts.gov

## KALBIAN HAGERTY LLP

_____
Plaintiff

vs.

Case Number ___2020 CA 001956 B___

## WELLS FARGO, N.A.

SERVE: Jovan Banks, Registered Agent       Defendant
2001 K Street, N.W., Suite 103
Washington, D.C. 20006                        **SUMMONS**

To the above named Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Haig V. Kalbian                                        _Clerk of the Court_
_____
Name of Plaintiff's Attorney

Kalbian Hagerty LLP                          By _____
_____              Deputy Clerk
Address
888 17th Street, N.W., Suite 1000, Washington, D.C. 20006

202-223-5600                               Date ___03/19/2020___
_____
Telephone
如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828
빈역을 원하시면, (202)879-4828로 전화주십시오.          የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

     IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

     If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                        Super. Ct. Civ. R. 4

 

## TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
### DIVISIÓN CIVIL
#### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                              Demandante

          contra

                                        Número de Caso: _____

_____
                              Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                        *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

                    Por: _____
_____                 Subsecretario
Dirección

_____

_____     Fecha _____
Teléfono

如需翻译，请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

የአማርኛ ከፈለጉ (202) 879-4828 ይደውሉ።     한국어로 원하시면 (202) 879-4828 로 전화하십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ።

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedirayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                        Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

KALBIAN HAGERTY LLP
_____

Case Number: __**2020 CA 001956 B**__

vs

Date: March 19, 2020

WELLS FARGO, N.A.
_____

☐ One of the defendants is being sued in their official capacity.

| | |
|---|---|
| Name: *(Please Print)* Haig V. Kalbian | Relationship to Lawsuit |
| Firm Name: Kalbian Hagerty LLP | ☒ Attorney for Plaintiff |
| Telephone No.: 202-223-5600    Six digit Unified Bar No.: 400976 | ☐ Self (Pro Se) |
| | ☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury    ☒ 6 Person Jury    ☐ 12 Person Jury

Demand: $ 83,985.00                          Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____  Judge:_____  Calendar #:_____

Case No.:_____  Judge:_____  Calendar#:_____

## NATURE OF SUIT:    *(Check One Box Only)*

### A. CONTRACTS

COLLECTION CASES

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
        Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
        Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
        Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
        Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
        Under $25,000 Consent Denied

### B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

### C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☒ 16 Negligence- (Not Automobile, Not Malpractice)

☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE        IF USED

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

| /s/ Haig V. Kalbian | March 19, 2020 |
|---|---|
| Attorney's Signature | Date |

CV-496/ June 2015



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

KALBIAN HAGERTY LLP
   Vs.                                       C.A. No.       2020 CA 001956 B
WELLS FARGO, N.A.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                                     Chief Judge Robert E. Morin

Case Assigned to: Judge KELLY A HIGASHI
Date: __March 19, 2020__
Initial Conference: 9:30 am, Friday, July 10, 2020
Location:   Courtroom JM-4
                500 Indiana Avenue N.W.
                WASHINGTON, DC 20001

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

**Filed**
**D.C. Superior Court**
**03/25/2020 12:52PM**
**Clerk of the Court**

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**

KALBIAN HAGERTY LLP
888 17th Street, N.W.
Suite 1000
Washington, D.C.  20006

      *Plaintiff,*

v.

WELLS FARGO BANK, N.A.
2001 K Street, N.W., Suite 103
Washington, D.C. 20006

      Serve:
      Corporation Service Company, Registered Agent
      1090 Vermont Avenue, N.W.
      Washington, D.C. 20005

      *Defendant.*

Civil Action No.: 2020 CA 001956 B

## **FIRST AMENDED COMPLAINT**

Plaintiff, KALBIAN HAGERTY LLP (hereinafter "Plaintiff" or "KH"), by and through its undersigned counsel, hereby files this action against WELLS FARGO BANK, N.A. (hereinafter "Wells Fargo", the "Bank", or "Defendant"), and alleges as follows:

### **PARTIES**

1.      Plaintiff Kalbian Hagerty LLP is a District of Columbia limited liability partnership law firm with its principal place of business at 888 17th Street, N.W., Suite 1000, Washington, D.C. 20006 and operates as a full service national and international law firm (hereinafter "KH").

2.      Defendant Wells Fargo Bank, N.A.  is a national financial institution that conducts banking business in the District of Columbia, including, but not limited to, its branch located at 2001 K Street, N.W., Suite 103, Washington, DC 20006, and, at all times relevant herein, has been

Plaintiff's depository and bank associated with its Interest on Lawyers' Trust Account ("IOLTA").

## JURISDICTION

3.     This Court has jurisdiction over this action and the Defendant pursuant to D.C. Code §§ 11-921 and 13-423, as Wells Fargo transacts business in the District of Columbia, and this action arises out of the provision of those services.

## INTRODUCTION

**4.     This is a case involving a District of Columbia law firm's client trust account being raided by fraudsters right under the nose of Wells Fargo—one of the largest financial institutions in the United States---who was entrusted to help safeguard client funds that are deposited into the client trust account.**

5.     This lawsuit arises from Defendant's negligent actions in processing a fraudulent cashier's check, which was unbeknownst to Plaintiff, when it was presented ***in person*** for deposit to the Bank and the Bank's failure to timely notify Plaintiff of its dishonor, such that Plaintiff was a victim of a fraud scheme.  But for Defendant's actions and omissions, Plaintiff would not have instructed that funds from the fraudulent cashier's check be disbursed from its trust account and forever lost.  Wells Fargo failed to exercise ordinary care in processing this cashier's check, breached its Deposit Account Agreement with Plaintiff, and negligently supervised its employees in allowing this fraud to occur, as stated herein.

## FACTUAL ALLEGATIONS

6.     KH has had a banking relationship with Wells Fargo for almost 20 years, dating back to the founding of the firm in the year 2000, subject to the terms and conditions of a Deposit Account Agreement.  In fact, Haig V. Kalbian, one of KH's founding partners, had a banking relationship with financial institutions (i.e. First Union Bank and Wachovia Bank) that were

eventually acquired by Wells Fargo.  Mr. Kalbian, who had a firm of his own prior to KH, commenced those banking relationships in or around 1990 where he maintained both operating and client trust accounts.  In these many decades, KH and its partners never encountered the type of mal and nonfeasance that lies at the core of this case.

7.      In accordance with applicable rules of professional responsibility, KH keeps and safeguards client funds in the firm's possession in its Wells Fargo IOLTA account prior to distribution in connection with a variety of client matters.

8.      On Monday, December 10, 2018, a "Mr. John R. Lopez" emailed Eric Siegel, Esq. (Of Counsel to KH) stating that he had signed an engagement letter to retain Eric Siegel to represent him in an employment dispute with his former employer, Sunbelt Rentals. Inc.

9.      On the same day, Mr. Siegel received an email purportedly from "Mr. Rod Samples," Chief Financial Officer of Sunbelt Rentals, which stated that Mr. Lopez had notified him that Mr. Siegel had been retained to represent Mr. Lopez.  The email acknowledged that Sunbelt Rentals owed Mr. Lopez $126,000.00 and that payment in full would be made within a week.  Mr. Samples asked for payment instructions, which Mr. Siegel supplied to him.

10.     On Tuesday, December 11, 2018, the receptionist at KH received a FedEx package purportedly from Sunbelt Rentals, addressed to Eric Siegel which contained what purported to be a cashier's check in the amount of $126,000.00 made payable to Kalbian Hagerty, LLP.

11.     The check was deposited the next day, December 12, 2018 by KH's Office Manager, LeVette Crawford-Thomas, in-person at Wells Fargo branch number 0065995, which is located at 2001 K Street, N.W., Suite 103, Washington, D.C. 20006.

12.     The deposit was acknowledged by Wells Fargo bank teller "Ebony" in a Transaction Receipt which indicated that the funds, $126,000.00, would be available to KH on

3

December 13, 2018.   Ebony did not examine the check in the presence of Ms. Thomas to assess its legitimacy prior to accepting the deposit.

13.     On Thursday, December 13, Ms. Thomas checked the balance in the KH IOLTA account online and confirmed that the $126,000.00 deposited on December 12, 2018 was available to KH.

14.     On Friday, December 14, "Mr. Lopez" emailed Mr. Siegel with instructions to wire the funds received from Sunbelt Rentals, minus the KH contingency fee, to his account in Mexico in order to complete a financial transaction.  James Hagerty, Managing Partner of KH, wired funds in the amount of $83,985.00 to the purported client through a bank in Mexico.  The amount of $42,015.00 was withheld as attorneys' fees.

15.     It was not until Monday, December 17, 2018, five days after the deposit, that KH received a notice from Wells Fargo that the cashier's check had been returned unpaid, and they deducted the full amount of $126,000.00, plus a return check fee from KH's IOLTA account.

16.     Upon information and belief, once discovering the fraud and/or dishonor of the check, Wells Fargo took no steps to contact the beneficiary bank in Mexico to halt payment and disbursement of the proceeds of that fraudulent check.

17.     KH has now suffered a loss of $83,985.00.

18.     Banks are required by law to credit the receiving account with funds from a cashier's check on the business day following the business day of the deposit.   12 U.S.C. § 4002(a)(2)(F).

19.     Wells Fargo's procedures should have been designed to determine the legitimacy of a cashier's check within the legal time limit for crediting the customer's account with the funds.

20.     For example, had Wells Fargo contacted the U.S. Department of Treasury's

4

Financial Crimes Enforcement Network ("FinCEN"), it would have been notified that the cashier's check was a forgery.  It would have learned that at least three other law firms had already been victims of this scam involving a Citibank official check **with the same account number** as that found on the cashier's check at issue in this action.

21.     KH acted reasonably in disbursing funds on the second day (approximately 48 hours) after the deposit in reliance on Wells Fargo's procedures detecting any potential fraud within the required 24-hour period.

22.     In fact, the money was wired approximately 48 hours after deposit, giving Wells Fargo plenty of time to discover the fraud and prevent the wire transfer from being authorized.

23.     KH contacted Wells Fargo to rectify its error in detecting the fraud and to refund the funds to KH's IOLTA account by letter dated January 17, 2019.

24.     By letter dated March 6, 2019, Wells Fargo declined to refund the $83,985.00 to KH's IOLTA account.

25.     In its letter, Wells Fargo deemed KH's claim filed on February 22, 2019, when in fact the claim was submitted to the Wells Fargo Fraud Claims Department via fax more than one month earlier, on January 17, 2019.

26.     In its March 6, 2019 letter, Wells Fargo stated that it is "responsible for exercising ordinary care and complying with the [Deposit Account] Agreement" with KH.  Wells Fargo further stated that in situations where a deposit is made in person, "… ordinary care requires only that we follow standards that do not vary unreasonably from the general standards followed by similarly situated banks."

27.     Wells Fargo is similarly situated to other national banks who have sophisticated policies and procedures in place to detect and address potential frauds associated with deposited

cashier's checks and other instruments, including but not limited to extensive training of banking employees regarding what to look for on a check to ensure its legitimacy or, conversely, to determine that it is fraudulent.

28.     Wells Fargo, like other national banks, also has "watch lists" and/or national databases containing exemplars of repeatedly deposited checks or cashier's checks that have been found to be fraudulent to aid in detecting fraud before it is committed.

29.     Yet, in the case of KH, Wells Fargo failed to exercise ordinary care by, among other ways, failing to visually inspect the check upon deposit in person and later to run the deposited cashier's check and its check number against its "watch list" and/or national database to uncover the fraud prior to KH believing that the check had cleared and subsequently wiring funds out of its IOLTA account in reliance on the clearance of the check.

30.     It is customary banking practice for a national bank such as Wells Fargo to require bank tellers to examine a cashier's check or other instrument presented in person for deposit in order to determine whether there are any indications that would lead to a suspicion that the presented check is fraudulent.

31.     Upon information and belief, neither Ebony nor any other Wells Fargo employee timely examined the check prior to making it available for wire transfer by KH.

32.     Wells Fargo's policies and procedures should have been designed to determine the legitimacy of a cashier's check within the legal time limit for crediting the customer's account with the funds.

33.     KH's loss was caused by Wells Fargo not notifying KH of the apparent fraud until *five days* after the deposit was made.

34.     Upon information and belief, Wells Fargo failed to properly train and supervise its

bank tellers, including but not limited to "Ebony", to determine whether cashier's check deposits show indicia of being fraudulent.

35. Significantly, Wells Fargo was on prior notice of this type of fraudulent activity, as there has been prior criminal and civil litigation in which fraudulent cashier's check(s) ***with the very same account number*** as on the check at issue here were used (*See, e.g., Milavetz et al v. Wells Fargo*, U.S. District Court for the District of Minnesota, Case 0:12-cv-00875). This alone should have placed Wells Fargo on notice and prompted it, through its employees, to be on alert and exercise the type of care that a customer, like KH, relied on.

36. Furthermore, a close examination of the cashier's check shows that it was an "HSBC" watermarked check drawn on a Citibank account. This additional fact should have raised suspicions at Wells Fargo that a fraud may very well be in the works.

37. Moreover, there were multiple different fonts on the check that are readily apparent upon close inspection by a trained eye, which should have raised further suspicions at Wells Fargo of a possible fraudulent check.

38. Wells Fargo was in a superior position than KH and its employees to detect this fraud and provide notice of dishonor prior to the wire transfer being processed, particularly in light of the prior civil and criminal litigation, and investigations by the Federal Bureau of Investigations, involving nearly identical fraudulent checks sharing the very same account number as the check at issue here.

39. Ordinary care required Wells Fargo to be vigilant in detecting fraudulent checks, particularly in the circumstances of this case, where ***the exact account number at issue*** has been used to commit fraud against Wells Fargo customers ***as early as 2012*** and has been circulated throughout the internet since that time. *See Milavetz et al. v. Wells Fargo*, U.S. District Court for

the District of Minnesota, Case 0:12-cv-00875) (filed April 6, 2012).

40.     A reasonable customer could expect that a bank of Wells Fargo's size and sophistication that exercises ordinary care on behalf of its customers in compliance with federal requirements would have circulated memoranda to all of its branches after receipt of the fraudulent check that is the subject of the 2012 lawsuit to prevent this occurrence from happening again.

41.     Bank records disclose that Wells Fargo either has or should have repeatedly sent notifications since 2012 going forward to alert its employees to be aware and vigilant for cashier's checks (1) of a significant monetary amount that may be suspicious or (2) that bore the *very same check number from the very same issuing bank* as the cashier's check that is the subject of the prior 2012 lawsuit against Wells Fargo.

42.     Wells Fargo also did not immediately contact the bank in Mexico where the funds were wired in an effort to put a "stop payment" on that account and/or to "take back" the funds once it was discovered that the cashier's check was fraudulent.

43.     *At the latest*, that discovery took place on Monday morning, December 17, when Wells Fargo notified KH that the cashier's check was dishonored.

44.     Had Wells Fargo communicated its discovery of the fraudulent check to the bank in Mexico immediately upon discovery on Monday morning, December 17, assuming that it was not discovered by Wells Fargo the previous Friday or earlier, the funds would not have been disbursed to the person committing the fraud in the first place.

45.     At the very least, Wells Fargo's notification to the bank in Mexico would have triggered an immediate investigation by the bank in Mexico requiring it to place a "hold" on the funds for disbursement.  Regrettably, Wells Fargo did not take that reasonable course of action, subjecting KH to being victimized and defrauded.

46.     Moreover, given that the IOLTA account is a client trust account, KH placed its trust and confidence in Wells Fargo to ensure that the funds held in that account were protected from fraudulent schemes such as that which occurred here.  These special circumstances gave rise to a fiduciary duty on the part of Wells Fargo to safeguard the funds in KH's IOLTA Account.

47.     Wells Fargo has breached its fiduciary duty by failing to properly screen the instrument prior to making the funds available in the IOLTA account, upon which KH relied in its transmission of an $83,985.00 wire.

48.     All conditions precedent for the filing of this lawsuit have been satisfied.

## COUNT I: NEGLIGENCE

49.     Plaintiff realleges and incorporates by reference preceding paragraphs as if fully set forth herein.

50.      Wells Fargo owed KH a duty to exercise reasonable and ordinary care, consistent with customary banking practices of other banks of its size and sophistication to, among other actions, visually inspect all checks being deposited in person at the bank and to take other efforts, including but not limited to comparing deposited checks with its database of discovered fraudulent checks, to uncover fraud and alert the depositor prior to being damaged by relying on funds availability in authorization additional transactions.

51.     Wells Fargo breached its duty of care in this instance by, *inter alia*, negligent acts including but not limited to (1) failing to visually inspect the deposited check at issue, (2) failing to scrutinize and analyze the check using its resources, expertise and database of fraudulent check exemplars to determine whether the check deposited on December 12, 2018 was, in fact, fraudulent, (3) failing to exercise due care in accounting for and documenting checks received to determine whether a given check is fraudulent, (4) failing to properly supervise its employees in

9

properly inspecting checks to determine whether they are fraudulent and thereby subject to dishonor, (5) failing to develop and enforce a system of internal controls to comply with federal banking laws, (6) failing to engage in safe and sound banking practices, (7) failing to comply with federal rules and regulations, (8) failing to provide KH, as an IOLTA account trustee of law firm client funds, with due diligence as required by the Financial Crimes Enforcement Network, and (9) failing to promptly notify the Mexico bank and/or KH of the cashier's check dishonor in time to prevent KH from believing that it "cleared" the bank and that it could disburse the check proceeds by wire transfer.

52.     Wells Fargo's breach of duty and/or negligent act(s) and/or omission(s) in this case directly and proximately contributed to or induced its acceptance of the fraudulent check and subsequent authorization to KH that the fraudulent check had "cleared" the bank to allow for its disbursement to the Mexican bank, thereby causing injury to KH, among other ways, by inducing KH to authorize the wire transfer and disbursement of $83,985.00 out of its IOLTA account.

53.     KH's damages proximately resulted from Wells Fargo's breaches of duty.

**WHEREFORE**, Plaintiff prays for the Court to find that Wells Fargo was negligent in carrying out its banking obligations and duties and enter judgment in favor of KH and against Wells Fargo for damages in an amount to be proven at trial, but not less than $83,985.00, plus pre- and post-judgment interest as provided by law.

### COUNT II – FAILURE TO PROVIDE TIMELY NOTICE OF DISHONOR

54.     Plaintiff realleges and incorporates by reference preceding paragraphs as if fully set forth herein.

55.     Wells Fargo failed to provide timely notice of dishonor, in violation of D.C. Code § 28-3-503, which requires that banks provide notice of dishonor "before midnight of the next

banking day on which the bank receives notice of dishonor of the instrument."

56.     Upon information and belief, Wells Fargo received notice of dishonor of the instrument on or before December 13, 2018.

57.     Accordingly, Wells Fargo was required to provide notice of dishonor to KH by midnight of the next banking day, i.e., Friday, December 14, 2018.

58.     Rather, Wells Fargo failed to provide notice of dishonor until Monday, December 17, 2018, five days after the deposit and well past the midnight deadline required by D.C. Code § 28:3-503.

59.     Had Wells Fargo provided timely notice of dishonor, the wire transfer would not have been authorized by KH and/or would have had the opportunity to take immediate steps to recall its December 14, 2018 wire transfer to the bank in Mexico.

60.     Due to Wells Fargo's failure to provide timely notice of dishonor of the cashier's check, KH was unable to secure a recall of the December 14, 2018 wire transfer.

61.     Therefore, Wells Fargo's failure to provide timely notice of dishonor proximately caused KH's loss of $83,985.00.

**WHEREFORE**, Plaintiff prays for the Court to find that Wells Fargo failed to provide timely notice of dishonor of the cashier's check to KH as required by D.C. Code § 28:3-503, resulting in monetary loss to KH, and enter judgment in favor of KH and against Wells Fargo for damages in an amount to be proven at trial, but not less than $83,985.00, plus pre- and post-judgment interest as provided by law.

## <u>COUNT III – BREACH OF CONTRACT</u>

62.     Plaintiff realleges and incorporates by reference preceding paragraphs as if fully set

forth herein.

63.     KH and Wells Fargo are parties to an enforceable contract referred to as the Wells Fargo Deposit Account Agreement.

64.     The Deposit Account Agreement provides that Wells Fargo is "responsible for exercising ordinary care and complying with the Agreement."

65.     The Deposit Account Agreement provides that Wells Fargo is "responsible for exercising ordinary care when collecting a deposited item."

66.     Wells Fargo breached the Deposit Account Agreement by failing to exercise ordinary care when collecting the deposited item, i.e. the cashier's check, at issue in this case, by (1) failing to visually inspect the deposited check at issue, (2) failing to scrutinize and analyze the check using its resources, expertise and database of fraudulent check exemplars to determine whether the check deposited on December 12, 2018 was, in fact, fraudulent, (3) failing to exercise due care in accounting for and documenting checks received to determine whether a given check is fraudulent, (4) failing to properly train and supervise its employees in properly inspecting checks to determine whether they are fraudulent and thereby subject to dishonor, (5) failing to develop and enforce a system of internal controls to comply with federal banking laws, (6) failing to engage in safe and sound banking practices, (7) failing to comply with federal rules and regulations, and (8) failing to provide KH, as an IOLTA account trustee of law firm client funds, with the due diligence required by the Financial Crimes Enforcement Network.

67.     As a direct and proximate result of Wells Fargo's breach of the Deposit Account Agreement, Kalbian Hagerty has suffered a loss of $83,985.00.

**WHEREFORE**, Plaintiff prays for the Court to find that Wells Fargo breached the Deposit Account Agreement, resulting in monetary loss to KH, and enter judgment in favor of KH and

against Wells Fargo for damages in an amount to be proven at trial, but not less than $83,985.00, plus pre- and post-judgment interest as provided by law.

## COUNT IV – BREACH OF FIDUCIARY DUTY

68.     Plaintiff realleges and incorporates by reference preceding paragraphs as if fully set forth herein.

69.      Based on the circumstances of KH being the trustee of client funds in its IOLTA account and its longstanding banking relationship of trust and confidence with Wells Fargo, the parties extended their relationship beyond the limits of the contractual obligations under the Bank's Deposit Account Agreement to a relationship founded upon trust and confidence.

70.     Wells Fargo is responsible for exercising ordinary care and complying with its Deposit Account Agreement and other federal and state law obligations.

71.     Wells Fargo is responsible for exercising ordinary care when collecting a deposited item.

72.     Wells Fargo breached its fiduciary duty owed to KH by failing to exercise ordinary care when collecting the deposited item, i.e. the cashier's check, at issue in this case, by (1) failing to visually inspect the deposited check at issue, (2) failing to scrutinize and analyze the check using its resources, expertise and database of fraudulent check exemplars to determine whether the check deposited on December 12, 2018 was, in fact, fraudulent, (3) failing to exercise due care in accounting for and documenting checks received to determine whether a given check is fraudulent, (4) failing to properly train and supervise its employees in properly inspecting checks to determine whether they are fraudulent and thereby subject to dishonor, (5) failing to develop and enforce a system of internal controls to comply with federal banking laws, (6) failing to engage in safe and sound banking practices, (7) failing to comply with federal rules and regulations, and (8) failing to

provide KH, as an IOLTA account trustee of law firm client funds, with the due diligence required by the Financial Crimes Enforcement Network.

73.     As a direct and proximate result of Wells Fargo's breach of its fiduciary duty owed to the law firm, Kalbian Hagerty has suffered a loss of $83,985.00.

**WHEREFORE**, Plaintiff prays for the Court to find that Wells Fargo breached its fiduciary duty to KH, resulting in monetary loss to KH, and enter judgment in favor of KH and against Wells Fargo for damages in an amount to be proven at trial, but not less than $83,985.00, plus pre- and post-judgment interest as provided by law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the District of Columbia Superior Court Rule of Civil Procedure.

Dated: March 25, 2020                          Respectfully submitted,

                                               KALBIAN HAGERTY LLP


                                               By /s/ Haig V. Kalbian
                                               Haig V. Kalbian, Bar No. 400976
                                               Eric L. Siegel, Bar No. 427350
                                               Spencer D. O'Dwyer, Bar No. 888187401
                                               888 17th Street, N.W., Suite 1000
                                               Washington, D.C. 20006
                                               (202) 223-5600
                                               (202) 223-6625
                                               hkalbian@kalbianhagerty.com
                                               esiegel@kalbianhagerty.com
                                               Sodwyer@kalbianhagerty.com

                                               *Counsel for Plaintiff Kalbian Hagerty LLP*

**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
Telephone: (202) 879-1133 Website: www.dccourts.gov

## KALBIAN HAGERTY LLP

Plaintiff
_____
vs.

Case Number  2020 CA 001956 B
_____

## WELLS FARGO BANK, N.A.

SERVE: Corporation Service Company, Registered Agent Defendant
1090 Vermont Avenue, N.W.
Washington, D.C. 20005

**SUMMONS**

To the above named Defendant:

      You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

      You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Haig V. Kalbian
_____
Name of Plaintiff's Attorney

Kalbian Hagerty LLP
_____
Address

888 17th Street, N.W., Suite 1000, Washington, D.C. 20006

202-223-5600
_____
Telephone

*Clerk of the Court*

By _____
                         Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오.    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

      IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

      If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





## TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
### DIVISIÓN CIVIL
#### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
                                    Demandante

        contra

_____                    Número de Caso: _____
                                    Demandado

### CITATORIO

Al susodicho Demandado:

   Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

   A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                        _SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

                                        Por: _____
_____                    Subsecretario
Dirección

                                        Fecha _____
_____
Teléfono

如需翻譯,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

[Amharic script] (202) 879-4828 [Korean script]      [Amharic script] (202) 879-4828 [Amharic script]

   IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

   Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

                        Vea al dorso el original en inglés
                        See reverse side for English original

CV-3110 [Rev. June 2017]                                        Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

KALBIAN HAGERTY LLP

Case Number: __2020 CA 001956 B__

vs

Date: __March 25, 2020__

WELLS FARGO BANK, N.A.

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)* | Relationship to Lawsuit |
|---|---|
| Haig V. Kalbian | ☒ Attorney for Plaintiff |
| Firm Name: Kalbian Hagerty LLP | ☐ Self (Pro Se) |
| Telephone No.: 202-223-5600   Six digit Unified Bar No.: 400976 | ☐ Other: |

TYPE OF CASE: ☐ Non-Jury    ☒ 6 Person Jury    ☐ 12 Person Jury
Demand: $ __83,985.00__    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____ Judge:_____ Calendar #:_____

Case No.:_____ Judge:_____ Calendar#:_____

---

NATURE OF SUIT:    *(Check One Box Only)*

**A. CONTRACTS**

COLLECTION CASES

| | |
|---|---|
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent    ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent    ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation    ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent    Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation    ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent    Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration |
| | Award (Collection Cases Only) |

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, Not Malpractice) |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 19 Wrongful Eviction |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 20 Friendly Suit |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 21 Asbestos |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 22 Toxic/Mass Torts |
| ☐ 07 False Arrest | ☒ 16 Negligence- (Not Automobile, Not Malpractice) | ☐ 23 Tobacco |
| ☐ 08 Fraud | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE    IF USED

# Information Sheet, Continued

**C. OTHERS**

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
  (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [ ] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability

- [ ] 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

**II.**

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
  Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- [ ] 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- [ ] 21 Petition for Subpoena
  [Rule 28-1 (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

**D.  REAL PROPERTY**

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

/s/ Haig V. Kalbian

**Attorney's Signature**

March 25, 2020

**Date**

CV-496/ June 2015

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Dorothy Corpening
_____
Plaintiff

vs.

Case Number    **2019 CA 007631 B**

James A. Rooths
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Christopher R. Wampler
_____
Name of Plaintiff's Attorney

12114B Heritage Park Circle
_____
Address
Silver Spring, MD 20906

240-833-2284
_____
Telephone

By _____
Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주세요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Dorothy Corpening
_____
                    Plaintiff

                    vs.                          Case Number   **2019 CA 007631 B**

Ricky Rooths
_____
                    Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Christopher R. Wampler
_____
Name of Plaintiff's Attorney

12114B Heritage Park Circle
_____        By  _____
Address                                              Deputy Clerk
Silver Spring, MD 20906

240-833-2284
_____        Date  _____
Telephone
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828률 전화주십시오      የአማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                          Super. Ct. Civ. R. 4

**Filed**
**D.C. Superior Court**
**03/25/2020 16:47PM**
**Clerk of the Court**

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

## KALBIAN HAGERTY LLP

Plaintiff

vs.

## WELLS FARGO BANK, N.A.

Case Number **2020 CA 001956 B**

SERVE: Corporation Service Company, Registered Agent Defendant
1090 Vermont Avenue, N.W.
Washington, D.C. 20005

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Haig V. Kalbian
Name of Plaintiff's Attorney

Kalbian Hagerty LLP
Address

888 17th Street, N.W., Suite 1000, Washington, D.C. 20006

202-223-5600
Telephone

By _____

Clerk of the Court

Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시요.    ያለንግርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
                              Demandante

contra

                                                    Número de Caso: _____

_____
                              Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                            *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                              Por: _____
_____                    Subsecretario
Dirección

                              Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202) 879-4828 로 연락하십시오       የአማርኛ ትርጉም አስፈላጊ ከሆነ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedirayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                      Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

KALBIAN HAGERTY LLP

Case Number: 2020 CA 001956 B

vs

Date: March 25, 2020

WELLS FARGO BANK, N.A.

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)* | Relationship to Lawsuit |
|---|---|
| Haig V. Kalbian | ☒ Attorney for Plaintiff |
| Firm Name: Kalbian Hagerty LLP | ☐ Self (Pro Se) |
| Telephone No.: 202-223-5600    Six digit Unified Bar No.: 400976 | ☐ Other: |

TYPE OF CASE: ☐ Non-Jury     ☒ 6 Person Jury     ☐ 12 Person Jury

Demand: $ 83,985.00     Other:

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____ Judge:_____ Calendar #:_____

Case No.:_____ Judge:_____ Calendar#:_____

---

NATURE OF SUIT:     *(Check One Box Only)*

**A. CONTRACTS**

COLLECTION CASES

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
    Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
    Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
    Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
    Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
    Under $25,000 Consent Denied

**B. PROPERTY TORTS**

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

**C. PERSONAL TORTS**

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☒ 16 Negligence- (Not Automobile,
    Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
    Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE     IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

/s/ Haig V. Kalbian

**Attorney's Signature**

March 25, 2020

**Date**

CV-496/ June 2015

**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA - CIVIL DIVISION**

**Kalbian Hagerty LLP**

                          Plaintiff

                                                    *vs.*            Civil Action Number: 2020 CA 001956 B

**Wells Fargo Bank, N.A.**

                          Defendant

## AFFIDAVIT OF SERVICE

I, Ambiko Wallace, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the Initial Order and Addendum, Summons in English and Spanish, and First Amended Complaint in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

That on 03/26/2020 at 12:20 PM, I served Wells Fargo Bank, N.A. c/o Corporation Service Company, Registered Agent at 1090 Vermont Avenue, NW, Washington, DC 20005 with the Initial Order and Addendum, Summons in English and Spanish, and First Amended Complaint by serving Max Schriner, Agent, authorized to accept service on behalf of Corporation Service Company, authorized to accept service.

Max Schriner is described herein as:

Gender: Male    Race/Skin: White    Age: 40    Weight: 180    Height: 5'7"    Hair: Brown    Glasses: No

I declare under penalty of perjury that this information is true and correct.

Sworn to before me on 03/30/2020

_Angela H. Creson_
Angela H. Creson
Notary Public, District of Columbia
My Commission Expires: March 31, 2024

_Ambiko Wallace_
Ambiko Wallace

Client Ref Number:KH v. Wells Fargo Bank, N.A.
Job #: 1576595

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050