UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KALBIAN HAGERTY LLP,<br><br>                Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>                Defendant. | Civil Action No. 1:20-cv-1091 (JMC) |

**MEMORANDUM OPINION**

A Kalbian Hagerty LLP employee deposited a check at a local Wells Fargo, N.A. branch.[1] After that check turned out to be part of a fraud scheme that cost Kalbian Hagerty more than $80,000, the law firm sued Wells Fargo. The bank filed a Motion to Dismiss. The Court grants in part and denies in part Wells Fargo's Motion.

**I.   BACKGROUND**

On December 10, 2018, Mr. John R. Lopez (or someone using that name) emailed Eric Siegel, a lawyer at the law firm Kalbian Hagerty, representing that he had signed an engagement letter retaining Siegel in an employment dispute against Lopez's former employer, Sunbelt Rentals, Inc. ECF 1-1 ¶ 8. That same day, Siegel received an email from a Mr. Rod Samples, purportedly the Chief Financial Officer of Sunbelt Rentals, confirming Mr. Lopez's email. *Id* ¶ 9. The second email (from Mr. Samples) said that Sunbelt Rentals owed Mr. Lopez $126,000. *Id.* Siegel responded and provided instructions for payment of that money. *Id.* The next day, Siegel

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

received a cashier's check made payable to Kalbian Hagerty for $126,000. *Id.* ¶ 10. The check was a bit unusual: it displayed a variety of different fonts, and had an "HSBC" watermark but was drawn from a Citibank account. *Id.* ¶¶ 36–37.

The law firm's Office Manager deposited the check at a local Wells Fargo branch on December 12. *Id.* ¶ 11. A bank teller at Wells Fargo accepted the check and provided a Transaction Receipt indicating that the money would be available the next day. *Id.* ¶ 12. According to Kalbian Hagerty, the bank teller did not examine the check for legitimacy at that time. *Id.* On December 14, Mr. Lopez emailed Mr. Siegel asking him to wire the money received from Sunbelt Rentals, minus the continency fee, to Mr. Lopez's account in Mexico. *Id.* ¶ 14. The law firm did so, wiring $83,985 to Mr. Lopez's account and withholding $42,015 as attorneys' fees. *Id.*

The check turned out to be counterfeit. *Id.* ¶ 15. But according to Kalbian Hagerty, it was not until December 17, five days after the initial deposit, that Wells Fargo sent it a notice that the cashier's check had been returned unpaid, and that $126,000 had been deducted from the law firm's trust account. *Id.* ¶ 15. Kalbian Hagerty further alleges that Wells Fargo did not attempt to stop the law firm's funds from being disbursed upon learning that the check was fraudulent. *Id.* ¶ 16. When Kalbian Hagerty asked for a refund, Wells Fargo refused. *Id.* ¶¶ 23–24.

Apparently, this was not the first time that this scam had been perpetrated against a law firm with a bank account at Wells Fargo. Kalbian Hagerty alleges that a check bearing the same account number as their fraudulent check was previously used to defraud another law firm. *Id.* ¶¶ 35, 39 (citing *Milavetz, Gallop & Milavetz, P.A. v. Wells Fargo, N.A.*, No. 12-cv-875, 2012 WL 4058065 (D. Minn. Aug. 22, 2012)).

After Wells Fargo declined to refund Kalbian Hagerty's money, the law firm filed this lawsuit in the Superior Court for the District of Columbia. *See* ECF 1. It filed an Amended

Complaint shortly thereafter. *See* ECF 1-1 at 3. Wells Fargo removed the case to federal court, ECF 1, and moved to dismiss the case, ECF 8.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has facial plausibility when a plaintiff pleads all of the elements of their claim and supports those elements with enough factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating a motion to dismiss, courts "must treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). But the Court is limited to considering only the matters within the complaint: if a party presents matters outside the pleadings and the court considers them, the motion must be converted into a motion for summary judgment under Federal Rule of Civil Procedure 56.

## III.    ANALYSIS

Kalbian Hagerty brought four claims in its Amended Complaint: breach of fiduciary duty, breach of contract, negligence, and failure to provide timely notice of dishonor in violation of D.C. Code § 28:3-503. Wells Fargo's Motion seeks to dismiss all four claims. The Court grants Wells Fargo's Motion as to the breach of fiduciary duty and the negligence claims, but denies it with regards to the breach of contract and failure to provide timely notice of dishonor claims.

### A.  Breach of Fiduciary Duty

Kalbian Hagerty alleges that Wells Fargo breached its fiduciary duty by failing to exercise ordinary care in accepting the fraudulent check. ECF 1-1 ¶¶ 68–73. A breach of fiduciary duty claim must allege facts sufficient to show (1) the defendant owed the plaintiff a fiduciary duty; (2)

the defendant breached that duty; and (3) the plaintiff suffered an injury that was proximately caused by that breach. *Xereas v. Heiss*, 987 F.3d 1124, 1130 (D.C. Cir. 2021).

Wells Fargo argues this claim should be dismissed because the bank did not owe Kalbian Hagerty a fiduciary duty. ECF 8-9 at 21–22. "A fiduciary relationship is founded upon trust or confidence reposed by one person in the integrity and fidelity of another." *Xereas*, 987 F.3d at 1131. Some relationships, like the attorney-client relationship, necessitate this type of trust and therefore automatically impose a fiduciary duty. *Krukas v. AARP, Inc.*, 458 F. Supp. 3d 1, 7 (D.D.C. 2020). But District of Columbia law is clear that no per se fiduciary relationship between a bank and its depositors exists: generally, the bank-depositor relationship is governed only by the terms of the contractual agreement. *Geiger v. Crestar Bank*, 778 A.2d 1085, 1090–91 (D.C. 2001).

Even though the nature of Wells Fargo's relationship with Kalbian Hagerty did not automatically establish a fiduciary relationship, the Parties could have developed one by "extend[ing their] relationship beyond the limits of the contractual obligations." *MobilizeGreen, Inc. v. Cmty. Found. for the Cap. Region*, 267 A.3d 1019, 1026 (D.C. 2022). Determining whether this occurred requires a "fact-intensive" inquiry into "the nature of the relationship, the promises made, the type of services or advice given and the legitimate expectations of the parties." *Xereas*, 987 F.3d at 1131.

Kalbian Hagerty alleges that the Parties developed the sort of "relationship founded upon trust and confidence" that would impose fiduciary duties. ECF 1-1 ¶ 69. To support this assertion, Kalbian Hagerty points to its nearly twenty-year banking relationship with Wells Fargo, as well as the fact that it maintains an Interest on Lawyers Trust Account (IOLTA) at the bank. ECF 1-1 ¶¶ 46–47, 68–73; ECF 13 at 18–19. But these facts, on their own, do not differentiate the Parties' relationship from any other bank-depositor relationship. Kalbian Hagerty does not include any

allegations in its Amended Complaint that give the Court reason to think that the services it has received for the past twenty or so years are different from those of any other depositor. Although the IOLTA account might differ from accounts maintained by some (but likely not all) other depositors, Kalbian Hagerty does not allege that the account imposes the sort of obligations that would trigger a fiduciary duty. In fact, Kalbian Hagerty alleges that its entire "banking relationship with Wells Fargo" has been "subject to the terms and conditions of a Deposit Account Agreement." ECF 1-1 ¶ 6. Kalbian Hagerty notes that the IOLTA account incurs extra fees to compensate for its additional regulatory requirements, ECF 13 at 19, but the Amended Complaint does not allege that anything beyond the terms of the Parties' contract governs the calculation of those fees or the bank's obligations.

Whether a fiduciary duty exists is a factual question generally left to be resolved later in litigation. *E.g.*, *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 341 (D.D.C. 2011). However, a claim alleging breach of fiduciary duty should be dismissed when a plaintiff's complaint does not include enough factual allegations to make it plausible that a fiduciary relationship exists. *See Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 162, 168–69 (D.D.C. 2013) (dismissing breach of fiduciary duty claim because the parties' relationship did not automatically trigger fiduciary duties, and the complaint did not plead facts showing a special relationship); *Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 6 (D.D.C. 2008) (dismissing breach of fiduciary duty claim because plaintiff's complaint did not show that the parties extended their relationship beyond contractual terms). Such is the case here. The sparse and conclusory allegations set forth by Kalbian Hagerty do not suggest that it has anything but a bank-depositor relationship with Wells Fargo. Given the background assumption that a bank and its depositors do not share a fiduciary relationship, Kalbian Hagerty's claim is dismissed at this juncture. If Kalbian

Hagerty has, or amasses, additional allegations to support this claim, it may seek leave to further amend its complaint.

### B. Breach of Contract

As noted earlier, Kalbian Hagerty alleges that its banking relationship with Wells Fargo is "subject to the terms and conditions of a Deposit Account Agreement." ECF 1-1 ¶ 6. Under this contract, Wells Fargo is "responsible for exercising ordinary care when collecting a deposited item." *Id.* ¶ 65. Kalbian Hagerty alleges that Wells Fargo violated this contractual term in eight different ways, including by failing to visually inspect the deposited check at issue and by failing to comply with federal regulations. *Id.* ¶ 66. The law firm lost $83,985 due to this alleged breach of contract. *Id.* ¶ 67.

To prevail on their breach of contract claim, Kalbian Hagerty must establish (1) a valid contract between the parties; (2) an obligation arising out of the contract; (3) a breach of that obligation; and (4) damages caused by breach. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). The Parties agree that they are part of a valid contract. ECF 1-1 ¶ 63; ECF 8-9 at 20. Wells Fargo also does not dispute that the Deposit Account Agreement requires the bank to exercise ordinary care when collecting a deposited check, or that Kalbian Hagerty lost money. *See* ECF 8-9 at 20–21. However, Wells Fargo argues that the Amended Complaint should be dismissed because Kalbian Hagerty did not properly allege that a breach occurred: because the contract did not expressly state any of the eight obligations referenced by Kalbian Hagerty in its Amended Complaint, the bank believes that it could not have violated any contractual terms. *Id.*

Wells Fargo misstates the premise of Kalbian Hagerty's claim. The textual source of the obligation owed by Wells Fargo is the contractual provision requiring the bank to "exercis[e] ordinary care when collecting a deposited item." ECF 1-1 ¶ 65. What that broad standard demands, and whether Wells Fargo satisfied those expectations, are questions reserved for later in litigation.

At this juncture, the only question is whether Kalbian Hagerty's Amended Complaint states a "claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *see also Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015) ("[T]o state a claim for breach of contract so as to survive a Rule 12(b)(6) motion to dismiss, it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach."). The Amended Complaint accomplishes this task. It identifies a contractual provision that imposes an obligation on Wells Fargo, and it alleges—with enough supporting factual assertions to make the allegation plausible—that the bank violated that contractual obligation. Accordingly, Wells Fargo's motion is denied as to the breach of contract claim.

### C. Negligence

Kalbian Hagerty also brings a negligence claim against Wells Fargo. "A claim alleging the tort of negligence must show: (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach." *Poola v. Howard Univ.*, 147 A.3d 267, 289 (D.C. 2016). According to Kalbian Hagerty, the bank breached its duty of ordinary care in multiple ways, resulting in the law firm losing $83,985. ECF 1-1 ¶¶ 49–53. Wells Fargo contends that this claim should be dismissed because the bank does not owe a duty to Kalbian Hagerty. ECF 8-9 at 17–18. Whether a duty exists is a legal question that can be resolved at this stage. *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 811 (D.C. 2011).

The Parties agree that they share a nearly twenty-year banking relationship that is "subject to the terms and conditions" of the Deposit Account Agreement. ECF 1-1 ¶ 6; ECF 8-9 at 7. This contract cannot generate the duty underlying Kalbian Hagerty's negligence claim, though, because a tort claim "must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship." *Choharis v. State Farm Fire and Casualty Co.*, 961 A.2d 1080, 1089 (D.C. 2008). The viability of Kalbian

Hagerty's negligence claim depends on whether the Amended Complaint includes enough factual allegations to plausibly allege a duty of care that is distinct from the contractual obligations.

One possible source of an independent duty is the underlying relationship between the two parties. For example, the innkeeper-guest relationship has traditionally imposed a special duty of care upon innkeepers. *Novak v. Cap. Mgmt. and Dev. Corp.*, 452 F.3d 902, 911 (D.C. Cir. 2006). Here, the Amended Complaint suggests that the Parties' relationship is built around the banking services that Wells Fargo provides to Kalbian Hagerty: but for Kalbian Hagerty's need to deposit checks and fulfill other banking needs at Wells Fargo, the two Parties would not engage with each other. However, this type of relationship does not impress a specific duty of care upon Wells Fargo. "The relationship between a bank and a depositor is a contractual relationship that is governed by the written agreement between the parties." *Geiger*, 778 A.2d at 1090. Unlike other relationships that come with an inherent duty of care, such as the innkeeper-guest relationship, there is no background presumption based on the nature of the Parties' relationship suggesting that Wells Fargo owes Kalbian Hagerty a duty of care. The Parties could have extended their relationship beyond the archetypical bank-depositor relationship, but the Amended Complaint does not allege that Kalbian Hagerty and Wells Fargo have done so. *See supra* at 3–6. So as a matter of law, neither the contract between the two parties nor their underlying relationship provides a basis for the duty that Kalbian Hagerty claims.[2]

Because there is no background presumption rooted in common law establishing a duty between banks and depositors, and the Amended Complaint does not indicate that this relationship

---

[2] In its Opposition to Defendant's Motion to Dismiss, Kalbian Hagerty suggests that the duty might stem from the Uniform Commercial Code (UCC). ECF 13 at 17. It is possible for a statute to generate a duty of care, *see Odemns v. District of Columbia*, 930 A.2d 137, 143 (D.C. 2007). However, all banks are subject to the UCC's rules, and Kalbian Hagerty does not identify any authority stating that the UCC disrupts the common law's background assumption that banks do not owe a special duty to their depositors.

is unique, the Court concludes that Wells Fargo did not owe Kalbian Hagerty the type of duty that could form the basis of a negligence claim.[3] The Court therefore grants Wells Fargo's Motion and dismisses this claim.

### D. Failure to Provide Timely Notice of Dishonor

District of Columbia law requires banks to provide a notice of dishonor "before midnight of the next banking day following the banking day on which the bank receives notice of dishonor of the instrument." D.C. Code § 28:3-503(c). Kalbian Hagerty alleges that Wells Fargo violated this law by sending notice of dishonor of the cashier's check on December 17, 2018, five days after Wells Fargo allegedly received its notice of dishonor. ECF 1-1 ¶¶ 56–58. According to Kalbian Hagerty, the failure to provide timely notice prevented the law firm from recalling its December 14 wire transfer. *Id.* ¶¶ 59–61.

The only basis set forth by Wells Fargo for dismissing this claim is an affidavit submitted by one of the bank's Assistant Vice President and Operational Risk Consultant, who declared that Wells Fargo received the notice of dishonor the same day that it notified Kalbian Hagerty of the fraudulent check. ECF 8-9 at 20. However, at the motion to dismiss stage, courts can consider only matters within the complaint. If a defendant presents matters "outside the pleadings," the court may convert the motion to dismiss into a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). But conversion is premature if all parties have not yet had the "opportunity to present evidence in support of their respective positions." *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011). The Court declines to convert Wells Fargo's Motion to Dismiss into a Motion

---

[3] The Court does not understand Kalbian Hagerty to frame its claim as one alleging negligent breach of contract, but even if Kalbian Hagerty did intend to bring that claim, it would still be dismissed because "D.C. law is clear . . . that the mere negligent breach of a contract . . . is not enough to sustain an action sounding in tort." *Islar v. Whole Foods Mkt. Grp., Inc.*, 217 F. Supp. 3d 261, 267 (D.D.C. 2016).

for Summary Judgment because Well Fargo's Motion does propose that result, and because Kalbian Hagerty has not yet had the opportunity to present evidence in support of their allegations. Therefore, the Motion to Dismiss this claim is denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Wells Fargo's Motion to Dismiss as to the breach of fiduciary duty and the negligence claims, but denies it with regards to the breach of contract and failure to provide timely notice of dishonor claims.

**SO ORDERED.**

DATE: March 31, 2023

_____
Jia M. Cobb
U.S. District Court Judge